CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
8/20/2018
JULIA C. DUDLEY, CLERK
BY: s/ SUSAN MOODY
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JANICE S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:17-cv-196 |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | By: Hon. Robert S. Ballou |
| Acting Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Janice S. ("Janice") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Janice alleges that the ALJ improperly discounted her credibility and failed to properly evaluate her tremors. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Janice's Motion for Summary Judgment (Dkt. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Janice failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Janice filed for DIB on June 6, 2013, claiming that her disability began on February 13, 2013. R. 160–62. The Commissioner denied Janice's application at the initial and reconsideration levels of administrative review. R. 80, 91. On December 2, 2015, ALJ H. Munday held a hearing to consider Janice's disability claim. R. 30–69. Janice was represented by an attorney at the hearing, which included testimony from Janice and vocational expert Andrew V. Beale. Id.

On January 11, 2016, the ALJ entered his decision analyzing Janice's claim under the familiar five-step process,[3] and denying her claim for benefits. R. 14–24. The ALJ found that Janice suffered from the severe impairments of tendonitis of the right shoulder, degenerative disc

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disease of the cervical spine, cervical radiculopathy, fibromyalgia, and chronic obstructive pulmonary disease. R. 16. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Janice had the residual functional capacity ("RFC") to perform light work, except that she: (1) can never climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs; (2) can occasionally balance, stoop, kneel, crouch, and crawl; (3) can frequently reach overhead and handle with the right upper extremity; and (4) can occasionally be exposed to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and moving machinery. R. 18–19.

The ALJ determined that Janice is capable of performing her past relevant work as a bartender and a waitress. R. 22. The ALJ also found that Janice could perform competitive work that exists in significant numbers in the national economy, such as sorter, recreation aide, and cashier. R. 23. Therefore, the ALJ concluded that Janice is not disabled. R. 24.

Janice requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review. R. 1–3. This appeal followed.

## ANALYSIS

Janice argues that the ALJ improperly discounted her credibility and failed to properly evaluate her tremors.

### Medical Evidence

Janice has a history of cervical spine degenerative disc disease, and had an anterior cervical discectomy and fusion at C5-7 in 1999.

Janice saw Craig L. Bookout, M.D., on February 16, 2013, reporting pain in her lower neck and shoulder blades. R. 251. Janice explained that for the last two days, she experienced numbness in her hands and right arm and throbbing in her upper arm. Id. Janice had excellent

grip strength and sensation in both hands. R. 252. Dr. Bookout's final impression was neck pain. R. 253. On February 21, 2013, Janice saw Henry R. Ivey, Jr., M.D., for pain in her right arm without tingling or numbness. R. 267. Dr. Ivey diagnosed tendinitis, and prescribed steroid medication. R. 266. Dr. Ivey recommended moist heat and application of arthritis cream three times a day. Id. Dr. Ivey noted that Janice's degenerative disc disease was stable. Id.

Janice saw Lauren E. Goater-Mathis, P.A., on March 6, 2013 for neck pain radiating into her right shoulder, right arm, and right elbow. R. 279. On examination, Janice was neurologically intact with normal reflexes, gait, and strength in all major muscle groups. Id. Ms. Goater-Mathis counseled Janice to return to physical therapy and to stop smoking, and prescribed Voltaren, Tylenol, and Flexeril. Id. Ms. Goater-Mathis gave Janice a work excuse until April 8, 2013. R. 281. Janice had a cervical MRI which revealed "[m]oderately severe degenerative disc disease at C4-C5 with a broad disc osteophyte complex which causes slight effacement of the ventral spinal cord as it crosses this level." R. 272.

On March 18, 2013, Janice saw Virginia Capps, P.T., and Lauren Goada, PA-C, at Professional Therapies of Roanoke for a physical therapy consultation. R. 285. Janice was diagnosed with cervical radiculopathy with a fair rehabilitation potential. Id. Janice performed physical therapy and was started on a home exercise program. Id. Janice tolerated physical therapy well without increases in pain. R. 286. Janice was discharged on April 29, 2013 after her treatment goals were not met. Id.

Janice saw Timothy M. Beirne, M.D., on October 2, 2013, reporting skin problems and pain in her neck, right shoulder, and right arm. R. 302. Janice also reported pain stemming from her chronic cervical degenerative disc disease. Id. Physical examination showed full range of motion in the upper extremities with no abnormalities. Id. Janice was offered an anterior cervical

4

discectomy and fusion in April 2013, but declined. Id. An X-ray of Janice's right forearm revealed normal results. R. 304.

Janice returned to Dr. Beirne on March 27, 2014, reporting right arm pain with numbness and tingling in her right thumb, a knot in her right arm, and persistent cervicalgia through her right arm. R. 340–41. Dr. Beirne diagnosed a mass in Janice's right forearm, cervical degenerative disc disease, and right cervical radiculopathy. R. 340. Dr. Beirne referred Janice to orthopedic surgery for the mass in her right forearm and to pain management for her cervical degenerative disc disease and right cervical radiculopathy. R. 342.

On April 21, 2014, Janice saw Cassandra R. Mierisch, M.D., for her right dorsoradial forearm mass. R. 403. Janice reported numbness in her dorsal thumb and index finger with pain located at the mass that is exacerbated with repetitive activity and heavy lifting. Id.

An MRI of Janice's right forearm on June 3, 2014 showed no mass. R. 517. However, the MRI showed "[n]onspecific changes within the pronator teres, supinator, and brachloradials may pertain to a proximal denervation as with a brachial plexus process (e.g. Parsonage-Turner) or a form of polymyositis" and "[e]dema within a portion of the medullary cavity of the radius and trace edema along the superficial myofascial plane of the volar." Id.

Janice saw Wadid Zaky Salama, M.D., on June 4, 2014 for evaluation of her lower neck pain and right lower extremity pain, numbness, tingling, and weakness. R. 374. Janice described her pain as "aching" and "shooting." Id. Janice rated her pain as an 8/10 on most occasions, but it can go up to 9/10. Id. Janice explained that moving her arms exacerbates her pain. R. 375. Physical examination showed full motor strength in all muscle groups, intact sensation in upper and lower extremities, and normal reflexes. R. 378. Dr. Salama found that Janice "is most likely experiencing neuropathic pain running along the sensory distribution of C5 and C2 nerve root(s)

on the right." R. 379. Dr. Salama administered a cervical epidural steroid injection and prescribed opioid medications. Id.

Janice returned to Dr. Mierisch on September 15, 2014 for pain in her right forearm and right shoulder that is made worse by repetitive activity. R. 415. On examination, Dr. Mierisch found "[e]dema within the right radius and overlying dorsal musculature, associated pain," and "changes of denervation and/or polymyositis." R. 417–18. Janice was referred to rheumatology and EMG testing. R. 419.

On September 23, 2014, Adegbenga Bankole, M.D., evaluated Janice for inflammatory myositis but indicated that she could be suffering from neuropathic myopathy. R. 430. Dr. Bankole found normal musculoskeletal and neurological findings, but found mild arthritic changes in Janice's hands and edema without any mass in her right forearm. R. 435. Dr. Bankole, evaluated Janice and determined that she does not have inflammatory muscle disease. Id. Dr. Bankole stated that Janice may have neuropathic myopathy and fibromyalgia. Id.

An EMG on November 6, 2014 showed "evidence of membrane instability and decreased recruitment at several C5-C6 muscles, with changes indicative of chronic axonal loss. All other muscles tested showed no evidence of membrane instability or abnormal recruitment patterns." R. 396. Trevar O. Chapmon, M.D., explained that Cymbalta helps Janice's cervical radiculopathy. R. 397. On November 10, 2014, Dr. Bankole informed Janice's primary care physician, Dr. Beirne, that she does not have inflammatory muscle disease but does have fibromyalgia. R. 458. On November 13, 2014, Dr. Mierisch explained that EMG studies performed by Dr. Chapmon were negative for plexopathy and cervical radiculopathy. R. 423. Dr. Mierisch explained that Janice reported that her "[r]ight upper extremity pain[, sleep problems, and fatigue have] been much improved with Cymbalta." Id.

6

Janice saw Amy J. Ostermann, P.A., on February 5, 2015 for her neck pain. R. 528. Ms. Ostermann noted that Janice declined an anterior cervical discectomy and fusion in April 2013, and Janice reported that she is still not interested in an anterior cervical discectomy and fusion unless she was at risk of becoming paralyzed without it. Id. Physical examination revealed full motor strength in the upper extremities, steady gait, and some mild reduction in reflexes of the upper extremities. R. 529. Janice reported that her arm pain is significantly diminished after using Cymbalta. R. 528.

Janice returned to Ms. Goater-Mathis on April 16, 2015. R. 538. Ms. Goater-Mathis recommended water therapy, prescribed a TENS unit, continued on current medications, and counseled her return in two months only if she wishes to discuss an anterior cervical discectomy and fusion. Id.

Janice attended water therapy from April 23, 2015 to May 14, 2015. R. 471–90. On May 14, 2015, Janice explained that she could not feel a significant difference in her neck and arm pain after three weeks of aquatic therapy. R. 487–88. Janice stated her primary care physician informed her that she could stop aquatic therapy if it is not helping. R. 488. Janice reported that her pain is still fairly severe in her neck and right shoulder, and she rated it as an 8/10. R. 488–89. Janice was discharged from aquatic therapy because her treatment goals were not met. R. 490.

Janice retuned to Dr. Ivey on July 10, 2015 following an automobile accident which exacerbated her pain. R. 499. Janice denied pain in her arms. Id. Dr. Ivey's objective examination resulted in normal findings except for tenderness over the cervical spine. R. 502.

On August 11, 2015, Janice followed up with Dr. Ivey, reporting worsening pain in her neck and right arm. R. 506. Janice also stated that medication is helping her. Id. Dr. Ivey found that Janice's degenerative disc disease had deteriorated. Id.

An MRI on September 14, 2015 showed "[s]pondylotic/discogenic and postsurgical changes . . . attention is directed to the C4/C5 (where there is additionally grade 1 retrolisthesis) and C6-C7 (where there additionally may be a mild degree of cord signal abnormality) levels." R. 521.

**Medical Opinions**

On February 27, 2014, medical consultant William S. Mercer, P.T., provided a consultative examination. R. 306–07. Janice reported pain in her posterior cervical area and lateral right arm, intense pain in her right forearm, loss of motion in her neck, and weakness in her hands. R. 306. Mr. Mercer found mild forward head posture, a straight cervical spine, 1+ reflexes in the upper extremities, mildly impaired sharp and dull sensation on the right hand, and decreased sensation in the right distal forearm, thumb, and index finger. Upper extremity was mildly limited with forward flexion and external rotation was limited to 40 degrees on the right side, but other measurements were normal. Id. Janice had good balance, could tandem walk "very well," could reach forward and overhead, and could squat, crawl, kneel, and bend. R. 307. Janice had decreased grip strength. Id. Mr. Mercer found "no obvious atrophy of [Janice's] shoulder girdle or upper arm musculature apparent to visualization and palpation." Id. The ALJ did not accord specific weight to Mr. Mercer's opinion, but explained that his findings, "like the findings of [Janice's] treating providers, support that [Janice] has some limitations in the use of the right upper extremity, but that she maintains the ability to perform less than a full range of light work activity." R. 21.

On March 5, 2014, at the initial level of administrative review, state agency physician William Amos, M.D., explained that Janice could (1) frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds; (2) sit, stand, and walk for six hours in an eight-hour workday; (3) occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; (4) never climb ladders, ropes, or scaffolds; and (5) not be exposed to concentrated hazards such as machinery and heights. R. 75–77. On August 26, 2014, at the reconsideration level of administrative review, state agency physician Bert Spetzler, M.D., concurred with Dr. Amos' conclusions. R. 86–88. The ALJ gave partial weight to these opinions as the record shows that Janice "should have additional limitations of repetitive use of the right upper extremity due to periodic findings of decreased grip strength and her subjective reports of increased pain with repetitive activity." R. 22.

**Credibility**

Janice argues that the ALJ improperly discounted her credibility.[5] Specifically, Janice argues that her subjective reports of pain in her neck, shoulder, and right arm are supported by examinations performed by her treating sources. Dkt. 14, at 12.

Janice wrote in her disability report that she suffers from disc degeneration which limits her ability to work. R. 177. Janice wrote in a pain questionnaire dated August 11, 2013 that for

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
  Here, SSR 16-3p was issued after the ALJ's consideration of Janice's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

the last two years, she experiences aching, burning, and throbbing pain in her right shoulder blade, right arm, and the right side of her neck. R. 197–98. Janice explained that household chores, driving, and holding her head up for too long exacerbate her pain. R. 197. Janice further explained that reaching above her head and sitting and standing for too long exacerbates her pain. R. 198. Janice stated that Tylenol, heating pads, rest, and her prescription medications alleviate her pain. Id. Janice explained that she can cook, clean, do laundry, shop for groceries, and drive a car. R. 204–06.

At the administrative hearing, Janice testified that she has dull, throbbing pain in her right triceps and pain in her right shoulder that she rated between an eight and a nine out of ten. R. 49. Janice described tremors and numbness in her hands that makes fine manipulation difficult. R. 50–51. Janice testified that she lies down three to four times a day for 30 to 45 minutes at a time. R. 55. Janice testified that she can sit for 20 to 25 minutes at a time, stand for 15 minutes at a time, and is incapable of walking a street block. R. 57–58.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must first determine if the claimant suffers from a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. If such an impairment exists, the ALJ must then determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the

10

impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig, 76 F.3d at 595 (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.

The ALJ discussed Janice's subjective reports of pain and symptoms and provided a detailed narrative discussion of Janice's medical history during the relevant period. The ALJ found that the Janice's "allegations are not entirely credible to the extent that the record does not fully support them." R. 19. The ALJ noted that Janice was consistently found to have full range of motion and normal strength in her upper extremities. The ALJ explained that Janice reported a decrease in her pain, sleep problems, and fatigue from Cymbalta. The ALJ explained that Janice was treated conservatively, as she was treated with prescription medication and physical therapy and never underwent an anterior cervical discectomy and fusion, despite being offered it. The ALJ noted that Janice's daily activities of cooking cleaning, shopping, and driving a car are indicative of her ability to perform light work and highlight the inconsistency of her subjective complaints with the objective medical evidence. See Dolfax v. Astrue, No. 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))).

I must give great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). I find that the ALJ's

11

determination of the consistency of Janice's statements regarding the severity of her symptoms in light of the objective medical evidence is supported by substantial evidence.

**Tremors**

Janice argues that the ALJ erred in evaluating her tremors. Specifically, Janice argues that because "[t]he ALJ determined [Janice] had limitations in the ability to handle and reach with the right upper extremity due to other impairments[, h]ad the tremors been properly considered, the ability to use the upper extremities would have been even further diminished." Dkt. 14, at 16.

A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," not "[the claimant's] statement of symptoms, a diagnosis, or a medical opinion." 20 C.F.R. § 404.1521. An impairment is not severe if it causes only "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis removed) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). While the failure to list an impairment as severe at Step Two does not necessitate a remand, the ALJ must still "discuss all of the medical evidence." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

The record contains very little evidence of Janice's tremors. Janice first reported tremors on August 11, 2015 to Dr. Ivey. R. 506. Dr. Ivey conducted a neurological exam and found "a

persistent tremor of the [right] hand." R. 509. Dr. Ivey explained that a neurology consultation may be necessary. R. 506. Two days later, Janice reported the tremors to Gary R. Simonds, M.D. R. 545. Dr. Simonds found that Janice "has a fairly gross tremor" that disappears when she holds her arm out. Id.

Janice saw neurologist Joseph M. Ferrara, M.D., on September 23, 2015. R. 559. Janice told Dr. Ferrara that her tremors came about suddenly. Id. Janice stated that her hands—especially her right hand—shake intermittently. Id. Janice explained that her tremors disrupts her ability to conduct fine motor activities, disrupts her sleep, and causes her to drop things on occasion. Id. Dr. Ferrara stated that Janice's tremor appeared to occur primarily while her hand was at rest, although it did occur occasionally when she walked. R. 561. Dr. Ferrara explained that Janice's tremor remitted when she conducted complex motor functions using her left arm and when doing certain functional tasks with her right arm that required "intense concentration." Id. Dr. Ferrara's assessment was that Janice suffered from a functional movement disorder. R. 562. Dr. Ferrara decided to wait to act on Janice's tremors and reassess if they worsen or if she develops new neurologic symptoms. R. 561.

The ALJ found that Janice's tremors were not severe. R. 16. The ALJ cited medical records from Janice's appointment with Dr. Ivey and her neurological consultation with Dr. Ferrara. R. 16–17. The ALJ noted that Janice's tremors disappeared when she performed complex motor tasks with her left arm or with concentration. Id. Janice has not presented any evidence showing that her tremors are severe or require accommodation in the RFC. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that is the claimant's burden to present evidence showing that an impairment is severe). Based on the evidence before him, the ALJ properly concluded that Janice's tremors caused "no more than minimally vocationally relevant

13

limitations" and his decision not to accommodate her tremors in the RFC is supported by substantial evidence.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend **DENYING** Janice's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **AFFIRMING** the decision of the Commissioner.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

Entered:  August 17, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge